UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANDREA B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-01416-RLY-MPB |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

14). Plaintiff Andrea B.[1] seeks judicial review of the Social Security Administration's final

decision deeming her ineligible for Disability Insurance Benefits (DIB). The matter is fully

briefed with the reply period passing without filing from Plaintiff. (Docket No. 7; Docket No.

13). It is recommended that the District Judge **AFFIRM** the decision of the Commissioner of the

Social Security Administration finding that Plaintiff Andrea B. is not disabled.

**Introduction**

Plaintiff, Andrea B., protectively filed her application for Title II on September 22, 2014,

for disability insurance benefits, alleging disability beginning August 6, 2014. (Docket No. 5-2 at

ECF p. 12). Her claim was denied initially and upon reconsideration. (Docket No. 5-2 at ECF p.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and the Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

12; Docket No. 5-6 at ECF p. 3; Docket No. 5-6 at ECF p. 9). Administrate Law Judge (ALJ)

Elias Xenos held a hearing on March 8, 2017, at which Andrea B., represented by counsel, and a

vocational expert (VE) Luann Castellana, appeared and testified. (Docket No. 5-2 at ECF p. 12).

After the hearing, on March 30, 2017, the ALJ issued an unfavorable decision. (Docket

No. 5-2 at ECF pp. 12–24). On March 10, 2018, the Appeals Council denied review, thereby

rendering it the agency's final decision for purposes of judicial review. (Docket No. 5-2 at ECF

pp. 2–5). On May 8, 2018, Andrea B. timely filed this civil action, asking the Court pursuant to

42 U.S.C. § 405(g) to review the final decision of the Deputy Commissioner denying her

benefits.

**Standard for Proving Disability**

To prove disability, a claimant must show she is unable to "engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her

impairments are of such severity that she is not able to perform the work she previously engaged

in and, if based on her age, education, and work experience, she cannot engage in any other kind

of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C.

§ 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory

standards by, in part, prescribing a five-step sequential evaluation process for determining

disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is,

then she is not disabled. Step two asks whether the claimant's impairments, singly or in

combination, are severe. If they are not, then she is not disabled. A severe impairment is one that

"significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listings includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similarly listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

**Standard for Review of the ALJ's Decision**

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This Court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ— not the Court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399– 400 (1971). Accordingly, the Court may not reevaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

## I.    The ALJ's Sequential Findings

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. (Docket No. 5-2 at ECF p. 14). She had not engaged in substantial gainful activity since August 6, 2014, the alleged onset date through the date of the decision. (*Id.*).

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Andrea B. was not disabled. (Docket No. 5-2 at ECF

p. 24). At step one, the ALJ found that Andrea B. had not engaged in substantial gainful activity.[2] (Docket No. 5-2 at ECF p. 14). At step two, the ALJ found that Andrea B. had the following severe impairments:

> [O]steoarthritis of the bilateral knees, status post left midfoot nonunion repair, status post right knee arthroplasty, bilateral knee efussion, chronic low back pain with left-sided sciatica, and lumbar spondylosis.

(Docket No. 5-2 at ECF p. 14). At step three, the ALJ found that Andrea B. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments—specifically considering Listings 1.02, 1.03, 1.04(A), 1.04(B), and 1.04(C). (Docket No. 5-2 at ECF pp. 16–17). After step three, but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following limitations: the claimant can occasionally climb ramps, and never climb stairs, ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, and crouch, but never crawl or kneel. The claimant must be permitted to alternate between sitting and standing at will, provided the claimant is not off task more than 10 percent of the work period. The claimant may never work around unprotected heights or hazardous machinery, and never operate foot controls bilaterally.

(Docket No. 5-2 at ECF p. 17).

At step four, the ALJ concluded that the claimant is unable to perform any past relevant work. (Docket No. 5-2 at ECF p. 22). At step five, the ALJ concluded that the Plaintiff was fifty years old, or an individual closely approaching advanced age, on the alleged disability onset

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether a profit is realized). 20 C.F.R. § 404.1572(a).

date. (*Id.*). The ALJ concluded that Andrea B. has at least a high school education and is able to communicate in English. (*Id.*). The ALJ found Plaintiff's past relevant jobs as a medical supply, administrative assistant/secretary, and office administrator, accounts receivable, did result in transferable skills at the sedentary level based on her acquired background and skills, including verbal recording, record keeping, and information giving. (*Id.*). The ALJ then found that there were a significant number of jobs in the economy that Plaintiff could still perform. Based on the testimony of the VE and, considering the Plaintiff's age, education, work experience, and RFC, the ALJ concluded she would still be able to perform the job of Order Clerk. ([Docket No. 5-2 at ECF p. 23](#)).

## II.  **Review of Plaintiff's Assertions of Error**

### A.  **Listing Analysis**

Andrea B. argues that the ALJ failed to provide explanation regarding the finding that her impairments do not meet or equal Listings 1.02, 1.03, or 1.04 and failed to obtain medical opinion as to possible equaling of the Listings. ([Docket No. 7 at ECF pp. 17](#)–23). Plaintiff contends that the ALJ did not provide a sufficient discussion of the evidence or consider, under Listing 1.00(B), other examples of what constitutes an inability to ambulate. (*Id.*). Plaintiff also argues that the ALJ was required to get an additional medical opinion on the issue of whether her conditions equaled a listing. (*Id.*).

Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments. 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).

As specified above, at step two, the ALJ found Plaintiff had several severe impairments related to her feet, knees, and back. (Docket No. 5-2 at ECF p. 14). The ALJ discussed Plaintiff's history of surgeries to her left foot, bilateral knees, and the evidence from December 2016 of lumbar spondylosis. (Docket No. 5-2 at ECF pp. 15–17). The ALJ then considered whether Plaintiff's impairments met or equaled Listings 1.02, 1.03, or 1.04, setting forth the criteria for each of the listings in his decision. (Docket No. 5-2 at ECF pp. 16–17). The ALJ explained that Plaintiff's:

> conditions do not meet any of the aforementioned thresholds as there is insufficient evidence either condition, singly or in combination, causes sensory or reflex loss, manifests as spinal arachnoiditis, creates chronic nonradicular pain accompanied by an inability to ambulate effectively, or otherwise results in inability to independently carry out activities of daily living effectively.

(Docket No. 5-2 at ECF p. 17).

The ALJ discussed the medical evidence of the record—from both before and after Plaintiff's August 2014 alleged onset date—in great detail in the remainder of his opinion. (Docket No. 5-2 at ECF pp. 18–21). The ALJ noted that after Plaintiff's left knee arthroscopy, debridement, and chondroplasty in September 2014, she reported post-surgery that she was able to walk her dog for 16 blocks and that she was overall very satisfied with the results. (Docket No. 5-2 at ECF p. 19). The ALJ also noted that follow-up examinations in early 2015 continued to show that her knee was in "generally good condition." (*Id.*). While some pain returned in March 2015, she was treated with a cortisone injection and arthrocentesis to the right knee. (*Id.*). Follow-up appointments showed essentially intact range of motion and vascular status in both knees. (*Id.*).

The ALJ's decision recites Plaintiff's intermittent complaints of increased knee, back, or foot pain followed by treatment records that documented a positive response to treatment.

(Docket No. 5-2 at ECF pp. 18–21). For instance, after Plaintiff's midfoot surgery, Dr. Montgomery in October 2015 observed 4 out of 5 strength in her foot muscles, and Plaintiff conceded that her foot pain had resolved. (Docket No. 5-2 at ECF p. 19). The ALJ also pointed out that in December 2015, Plaintiff complained of increased low back pain that had been exacerbated by the cold weather but in the same treatment record she "attested to significant relief in her overall physical condition that same month, specifically, a reported 75 percent relief in her pain." (*Id.*). Though Plaintiff complained of increased right knee pain in early 2016, she underwent a right partial knee arthroplasty in late March 2016, after which, the ALJ explained, Plaintiff was described as "healing well" and she walked into a follow-up appointment in early April 2016 "without need for assistance" and "had apparently begun outpatient physical therapy without issue." (Docket No. 5-2 at ECF p. 20). The ALJ noted that Plaintiff subsequently "admitted to broad relief in her knee on additional follow-up appointments in May, September, and October 2016" with only "some persistent stiffness and reported 'popping'." (*Id.*). While a December 2016 x-ray of her lumbar spine showed some interval progression of lower lumbar spondylosis and other degenerative changes, the ALJ referenced the limited, four-week course of physical therapy Plaintiff completed in December and January 2017—records which reflect Plaintiff complaints of very minimal pain and a discharge summary that noted Plaintiff could ambulate independently and her gait was within functional limits. (*Id.*).

Contrary to Plaintiff's argument, the ALJ's decision reflects that he carefully considered the listing criteria and discussed the relevant treatment records, which showed that Plaintiff's impairments did not entitle her to a presumption of disability. (Docket No. 5-2 at ECF pp. 14–21). The ALJ's step-three determination was supported by substantial evidence and should be affirmed. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

To establish she was presumptively disabled at step three, Plaintiff has the burden to show that her knee and back pain met or medically equaled all of the criteria under Listings 1.02A, 1.03, or 1.04. *See* 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). "An impairment that manifests only some of [the required] criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Under the second method of proving presumptive disability, to demonstrate "medical equivalence," the claimant must present "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.*; *see* 20 C.F.R. § 404.1526(a) (an impairment is "equivalent" to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment"). "Medical equivalence" may be found in one of three ways: (1) the claimant's impairment is included in the listings but one or more of the criteria set out in the listing for that impairment cannot be met; (2) the claimant's impairment is not included in the listings, but another impairment can be used as a guide; or (3) the claimant has a number of impairments that do not meet or equal a listed impairment, but can be combined together to meet an analogous impairment in the listings. *See* 20 C.F.R. § 404. 1526(b).

Plaintiff argues that the ALJ was required to get an additional medical opinion on the issue of whether her conditions *equaled* a listing. (Docket No. 7 at ECF pp. 16–22). However, Plaintiff makes no effort to explain why her impairments equaled a listing, which is her burden to do so. Moreover, Andrea B. merely argues that, pursuant to SSR 96-6p, "the ALJ should obtain an updated medical opinion from a medical expert where additional evidence is received that could modify the State Agency medical consultant's finding that the impairment was not equivalent in severity to any impairment in [the Listings]." (Docket No. 7 at ECF p. 21). Yet, Plaintiff makes no argument as to why her impairments equal a listing. This argument was raised

by the Commissioner in his response brief, which went unopposed and therefore, Plaintiff's

argument is waived. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (failure to raise

argument in district court results in waiver). Plaintiff fails to carry her burden to explain how her

impairments equal a listing or point to evidence of disabling limitations that would establish

entitlement to presumptive disability at step three. (Docket No. 13 at ECF p. 21). Plaintiff's

argument that SSR 96-6p required the ALJ to get an updated medical opinion is particularly

unpersuasive in light of the fact that two state-agency reviewing physicians determined that the

evidence did not show Plaintiff had any severe impairments (Docket No. 5-6 at ECF pp. 5-6, 10–

11) and Plaintiff did not specify the evidence received after these reviews that could modify

those opinions. (Docket No. 7 at ECF p. 21).

    As for Plaintiff's argument that her conditions met a listing, she fails to establish

evidence that her impairments met *all* of the criteria for Listings 1.02A, 1.03, or 1.04C. Listing

1.02A relates to major dysfunction of a joint "[c]haracterized by gross anatomical deformity

(e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and

stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and

findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction,

or ankyloses of the affected joint(s)" with "[i]nvolvement of one major peripheral weight-bearing

joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in

1.00B2b." *See* 20 C.F.R. § 404.1520(d), pt. 404, subpt. P, app. 1. Because the listings deal with

presumptive disability, the standard for demonstrating an inability to effectively ambulate is

defined as "an *extreme limitation* of the ability to walk; i.e., an impairment(s) that interferes very

seriously with the individual's ability to independently initiate, sustain, or complete activities . . .

defined generally as having insufficient lower extremity functioning . . . to permit independent

ambulation without the use of hand-held assistive device(s) that limits the functioning of *both* upper extremities" (emphasis added). *Id.* The listing further notes that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living . . . [and] have the ability to travel without companion assistance to and from" work. *Id.* Ineffective ambulation can include: the inability to walk without the use of a walker, two crutches, or two canes; the inability to walk a block at a reasonable pace on rough or uneven surfaces; and the inability to carry out routine ambulatory activities, such as shopping and banking. *Id.*

Listings 1.03 and 1.04C also require that Plaintiff demonstrates she cannot effectively ambulate to establish presumptive disability under the criteria for the listings. *See* 20 C.F.R. § 404.1520(d), pt. 404, subpt. P, app. 1. Specifically, Listing 1.03, which pertains to reconstructive surgery of a major weight-bearing joint, requires that Plaintiff establish an "inability to ambulate effectively . . . and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." *Id.* Listing 1.04C, which relates to disorders of the spine "resulting in compromise of a nerve root . . . or the spinal cord." *Id.* Under Listing 1.04, Plaintiff needed to provide evidence of *all* of the following: (1) lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medically acceptable imaging; (2) chronic nonradicular pain *and* weakness; and (3) resulting in an inability to ambulate effectively as defined in 1.00B2b. *Id.*

Plaintiff mainly focuses on her need to demonstrate ineffective ambulation for all three listings. (Docket No. 7 at ECF pp. 16–22). Andrea B. argues that the ALJ failed to consider the other examples of what constitutes ineffective ambulation when he evaluated whether her conditions met or equaled a listing at step three. (*Id.*) However, Plaintiff fails to argue that the

11

medical evidence established her knee and back pain met the other criteria necessary to prove presumptive disability, and, for this reason alone Plaintiff's argument fails., *See* 20 C.F.R. § 404.1520. "Although an ALJ should provide a step-three analysis, a claimant *first* has the burden to present medical findings that match or equal in severity all the criteria specified by a listing." *Knox v. Astrue*, 327 F. App'x 652, 655 (7th Cir. 2009) (emphasis added). Like *Knox* Plaintiff incorrectly urges the court to skip this threshold step of examining whether she produced evidence to show her knee and back impairments met all the listing criteria under 1.02A, 1.03, or 1.04C.

Regardless, even Plaintiff's argument regarding ineffective ambulation falls short of establishing that her impairments entitled her to a presumption of disability at step three. (Docket No. 7 at ECF pp. 16–22). She faults the ALJ's failure to consider other examples, "such as an inability to walk a block at a reasonable pace on rough or uneven surfaces, or the inability to carry out routine activities, like shopping and banking." (*Id.* at ECF p. 20). For support, Plaintiff cites Dr. Montgomery's, her podiatrists, instructions to remaining nonweightbearing from August to October 2014, before her December 2014 procedure to address left midfoot nonunion. (*Id.* at ECF p. 18). But, by March 2015, Plaintiff was climbing stairs. (Docket No. 5-15 at ECF pp. 18–19). In April 2015, Plaintiff reported to Dr. Montgomery that she felt "great" and that it was "the best her foot has felt in a long time" and her activities were "slowly improving due to foot getting better"—her gait was "relatively normal" during this examination. (Docket No. 5-18 at ECF p. 35).

Plaintiff also cites her October 2015 fall that aggravated her knee pain and her March 2016 right partial knee arthroplasty with a December 2016 subsequent revision. (Docket No. 7 at ECF p. 8). But these records reflect the ALJ's well-reasoned conclusion.  While Plaintiff had

several surgical procedures involving her knees and left foot after her alleged onset date, she experienced "notable improvements" following those repairs. (Docket No. 5-2 at ECF p. 21). The ALJ also noted that despite complaints of knee, foot, and back pain of varying degrees and duration, Plaintiff's examinations were essentially normal, reflecting few limitations with things like range of motion or strength. (*Id.*). Significantly, Plaintiff does not cite evidence that she could not walk a block at a reasonable pace[3] on rough or uneven surfaces or evidence that she could not carry out routine daily activities, such as completing errands. (Docket No. 7 at ECF pp. 16-22). Plaintiff shifts the burden of finding evidence to support her argument onto the Court, which is improper. Because Plaintiff's step-three argument is built on a contention that the ALJ did not properly consider alternative evidence of ineffective ambulation,  without citing any such evidence, this argument cannot be the basis for remand.

While Listing 1.00B2B provides a number of examples of an inability to ambulate effectively, the evidence in the record does not establish that Plaintiff's impairments resulted in sufficiently compromised ambulation, as the ALJ concluded (Docket No. 5-2 at ECF pp. 14–21). The records Plaintiff relies on show that Plaintiff's gait was slightly antalgic during some of her examinations or that she was notweightbearing for short periods of time before or after surgical procedures. (Docket No. 7 at ECF p. 18). The ALJ cites these records in his decision (Docket No. 5-2 at ECF pp. 14–21) and concludes that they did not constitute evidence that Plaintiff's impairments met or equaled Listing 1.04C (Docket No. 5-2 at ECF p. 14). Because substantial

---

[3] In fact, Plaintiff's own treating physician, Dr. Fisher, opined in February 2017 (in an opinion Plaintiff urges this court to give greater consideration to) that Plaintiff could walk two blocks without rest and could stand for an hour before needing to sit down. (Docket No. 5-17 at ECF pp. 52–56). Dr. Fisher also opined that Plaintiff did not need an assistive device and was still capable of occasionally twisting, stooping, bending, crouching, squatting, and climbing stairs—findings that are at odds with Plaintiff's contention that she was presumptively disabled because she essentially could not walk. (*Id.*).

evidence supported the ALJ's step-three determination, and because Plaintiff wholly fails to carry her burden of demonstrating that she was presumptively disabled under the listing criteria, Plaintiff's first argument is unavailing. *See Elder*, 529 F.3d at 413.

### B.  Treating Source Opinion of Dr. Fisher

Andrea B. argues that the ALJ erred in only giving partial weight to Dr. Fisher's opinion. (Docket No. 7 at ECF pp. 24–28). Specifically, Andrea B. argues that the ALJ improperly discredited Dr. Fisher's opinion because the evidence was solicited by her for the purposes of her disability application. (Docket No. 7 at ECF p. 26). She also argues that the ALJ ignored evidence in the record that was consistent with Dr. Fisher's opinion. (Docket No. 7 at ECF p. 25). Finally, she argues that the ALJ wholly failed the special deference that must be attributed to a treater's opinion and did not consider the checklist factors mandated by the regulations. (Docket No. 7 at ECF pp. 27–28).

A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is (1) supported by medical findings; and (2) consistent with substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). A decision to deny a physician's opinion controlling weight does not prevent the ALJ from considering it, however, and the ALJ may still look to the opinion after opting to afford it less evidentiary weight. *Elder*, 529 F.3d at 415. The weight the ALJ does afford the opinion depends on several factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, *see* 20 C.F.R. § 404.1527(d)(2)(i)-(ii), whether the physician supported his or her opinions with sufficient explanations, *see id.* § 404.1527(d)(3), and whether the physician specializes in the medical conditions at issue, *see id.* § 404.1527(d)(5). *See also Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). If the ALJ discounts the physician's opinion after considering these

factors, the decision stands so long as the ALJ "'minimally articulate[d]' his reasons—a very deferential standard that [the Seventh Circuit has], in fact, deemed 'lax.'" *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

Plaintiff insists that the ALJ should have given greater consideration to the longstanding nature of her treatment relationship with Dr. Fisher and to the evidence of the "setbacks and complications [she] suffered." (Docket No. 7 at ECF p. 24). However, the ALJ discussed Dr. Fisher's findings and provided sufficient reasons, consistent with the regulatory factors, for giving his opinion only partial weight. (Docket No. 5-2 at ECF pp. 20–21).

In February 2017, Dr. Fisher filled out a Physical Residual Functional Capacity Questionnaire. (Docket No. 5-17 at ECF pp. 52–56). He listed her diagnoses as "chronic arthritis of knee and back" and stated that her prognosis was "fair." (*Id.*). Dr. Fisher described Plaintiff's symptoms as left knee pain and chronic low back pain with sciatica. (*Id.*). On this check-box form, when asked how often Plaintiff's pain or other symptoms would be "severe enough to interfere with attention and concentration needed to perform even simple work tasks," Dr. Fisher checked a space next to the option "constantly." (*Id.*). Yet, when asked to what degree Plaintiff could tolerate work stress, Dr. Fisher checked the space next to "[c]apable of high stress work." (*Id.*). Dr. Fisher opined that Plaintiff could walk two blocks without rest, could sit for more than 2 hours before needing to get up, could stand for 1 hour before needing to sit down, could sit for at least 6 hours per day, and could stand or walk for less than two hours per day. (*Id.*). Dr. Fisher also opined that Plaintiff would need to walk around during the day every 60 minutes for 10 minutes and would need a job that permitted shifting positions at will throughout the day. (*Id.*). Dr. Fisher checked boxes indicating that Plaintiff would not need to elevate her legs while sitting nor would she need to use an assistive device for walking. (*Id.*). As for postural activities, Dr.

Fisher checked spaces indicating Plaintiff could occasional twist, stoop/bend, crouch/squat, and climb stairs but could never climb ladders and only rarely balance. (*Id.*). Finally, Dr. Fisher checked a box next to the space stating that Plaintiff would miss more than four days per month due to her impairments. (*Id.*).

Although Plaintiff argues that the ALJ should have given greater weight to Dr. Fisher's opinion, Plaintiff does not argue why this alleged error harmed her. This is significant because the ALJ's residual functional capacity determination is largely consistent with Dr. Fisher's findings. (Docket No. 5-2 at ECF p. 17). For instance, the ALJ's postural limitations were *more* restrictive than those that Dr. Fisher assessed. (*Id.*).

Moreover, the ALJ explained that he gave only partial weight to Dr. Fisher's opinion for a number of reasons consistent with the regulatory factors. (Docket No. 5-2 at ECF pp. 20–21). The ALJ noted that Dr. Fisher did not have expertise in disability programs or their evidentiary requirements. (*Id.*). The ALJ was "simultaneously mindful that Dr. Fisher [was] a qualified medical professional who share[d] a longstanding treatment relationship with the claimant and has had the opportunity to perform multiple in-person evaluations . . . [but also recognized Dr. Fisher's] report [was] primarily a checklist without adequate explanations or support." (*Id.*). The ALJ noted that this form opinion was "likely provided to the claimant as an accommodation for disability benefits." (*Id.*). Further, "even setting this aside, the specific portion of Dr. Fisher's [opinion] suggesting that the claimant would miss more than four days of work per month, in particular, greatly overstates the actual extent of the claimant's physical symptomology." (*Id.*). The ALJ explained that "[i]n reaching this conclusion, the undersigned credits the claimant's notable improvements following the surgical repair to both of her knees in 2014 and 2016, for example her admission she could walk her dog for 16 blocks at a time." (*Id.*). The ALJ also

pointed out examples from medical records reflecting Plaintiff's own reports that she was feeling better than she had in years and evidence of essentially normal physical examination. (*Id.*). Still, the ALJ credited Dr. Fisher's opinion that Plaintiff should remain seated for any range of work activity. (*Id.*). In short, the ALJ's decision complied both with the regulatory factors under 20 C.F.R. § 404.1527(c) and the requirement that he provide a sufficient explanation for discounting the treating physician's opinion. (*Id.*).

Plaintiff critiques the ALJ's treatment of Dr. Fisher's opinion because the ALJ notes the form Dr. Fisher completed was provided by the claimant for a disability application, which Plaintiff argues is improper. It is true that the fact that evidence was sought by a claimant or her representative is not a sufficient justification to ignore the evidence. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The regulations endorse this inquiry. *See id.* 20 C.F.R. § 404.1513(b)(6). However, unlike *Punzio* where "neither" of the ALJ's reasons for rejecting the treating source's opinion were sound, here the ALJ noted that "even setting [] aside" that the questionnaire was provided by the Plaintiff, there were several other reasons to discredit Dr. Fisher's opinion; several of those reasons have been reviewed in this entry and found sound.

Plaintiff concedes that she experienced improvement with treatment and her surgical repairs, but insists that the ALJ should have given more consideration to evidence of her setbacks and an October 21, 2015, treatment record from Dr. Montgomery, which noted that he hoped Plaintiff could return to work but that she needed more time to regain her strength and stability. (Docket No. 7 at ECF pp. 23–27). Dr. Montgomery's note indicated that with Plaintiff's feet pain resolved, they could focus on her knees. (Docket No. 5-18 at ECF p. 39). However, Plaintiff subsequently admits to broad relief in knees during later follow-ups in May, September, and October 2016. (Docket No. 5-2 at ECF p. 20, citing Docket No. 5-12 at ECF p. 42; Docket No.

5-16 at ECF pp. 48–65). Plaintiff is requesting this Court to reweigh evidence, which goes beyond the scope of this Court's review. *See Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) ("We do not reweigh the evidence or substitute our own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, we must uphold the decision under review."). As it is evident form the ALJ's discussion of the evidence noted above, the decision here—including the ALJ's evaluation of Dr. Fisher's opinion—is supported by substantial evidence.

### C.  SSR 16-3p and ALJ's Subjective Symptom Evaluation

Finally, Andrea B. argues that the ALJ improperly discounted her allegations regarding pain and functional limitations. (Docket No. 7 at ECF pp. 29-34). Plaintiff acknowledges that the ALJ explicitly discussed many of the factors under 20 C.F.R. § 404.1529 in weighing Plaintiff's complaints, but insists that the ALJ did not consider her work history and impermissibly equated her limited daily activities with an ability to work. (*Id.*).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, which are supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008)) ("An ALJ's credibility determination may be overturned only if it is 'patently wrong'"). Under SSR 16-3p,[4] ALJs follow a two-step process to evaluate a claimant's subjective symptoms. First, ALJs consider whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's

---

[4] SSR 16-3p replaced SSR 96-7p. Among other things, SSR 16-3p clarifies SSA's existing policy be explicitly stating that an ALJ need not discuss all of the regulatory factors that he considers, except as he finds them pertinent to the case. SSR 16-3p (S.S.A.), 2016 WL 1119029, (March 28, 2016).

symptoms, such as pain. *Id.* ALJs then evaluate the intensity and persistence of those symptoms to determine the extent the symptoms limit an individual's ability to perform work-related activities. *Id.* In evaluating these subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ discussed several factors under 20 C.F.R. § 404.1529 that detracted from or contradicted Plaintiff's statements. (Docket No. 5-2 at ECF p. 21). The ALJ explained that there were "several reasons [that] led [him] to find the claimant's allegations of disabling limitations generally inconsistent with the available medical evidence of record." (*Id.*). The ALJ explained that the "medical evidence of record does reflect an extensive history of treatment consisting of both ongoing medication management as well as several noted surgeries," but that "this same body of evidence not only shows that the claimant experienced substantial improvements in her condition following each surgery, but also that she regained notable functional capabilities as well." (*Id.*). Next, the ALJ pointed out that "subsequent clinical examinations such as x-rays and MRIs have confirmed largely stable postsurgical changes throughout the relevant period." (*Id.*). The ALJ pointed out that Plaintiff's "activities of daily living persuasively indicate that she retains greater functional capacity than an individual with total disability insofar as she reported being capable of a variety of activities, including walking her dog for extended distances, maintaining some semblance of a daily routine, using a computer, and performing some light household chores, among others." (*Id.*). These were all factors that the ALJ appropriately considered in assessing Plaintiff's statements regarding her symptoms and limitations.

Andrea B. seems to argue that the ALJ should have afforded greater weight to her allegations of limited activities. (Docket No. 7 at ECF pp. 28-33). Yet, Plaintiff also appears to argue that the ALJ relied too heavily on her activities as evidence that she could work, citing case law holding that an ALJ should not equate limited activities with an ability to do full-time work. (*Id.*). Either way, Plaintiff's argument requests that this Court reweigh the evidence under 20 C.F.R. § 404.1529(c) factors despite the fact that the ALJ provided a sufficient explanation for his assessment of Plaintiff's allegations. It is clear from the ALJ's decision that he did not impermissibly equate limited activities with an ability to work full time. (Docket No. 5-2 at ECF p. 21). The ALJ merely noted that Plaintiff's activities were more robust than she alleged and were at odds with her claims of disabling functional limitations. (*Id.*). While the ALJ did not expressly weigh Plaintiff's work history, this was, at most, harmless error given that the ALJ provided numerous other reasons for discounting Plaintiff's subjective complaints. *See Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) (citations omitted) ("Not all of the ALJ's reasons must be valid as long as enough of them are, and here the ALJ cited other sound reasons for disbelieving Halsell."). The ALJ provided a well-reasoned assessment of Plaintiff's statements regarding the severity of her symptoms and related functional limitations.

**Conclusion**

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the

ALJ's opinion. Any objections to the Magistrate Judge's Report and Recommendation shall be

filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections

within fourteen days after service shall constitute waiver of subsequent review absent a showing

of good cause for such failure.

**SO RECOMMENDED** the 7th day of August, 2019.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.